[No. B204321. Second Dist., Div. Seven. Nov. 10, 2009.]

LEE JACKSON et al., Plaintiffs and Appellants, v.
ROBERT T. YARBRAY, Defendant and Appellant;
BEST BEST & KRIEGER LLP, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 2 and 3 of the Discussion.

## Counsel

Law Offices of Yvonne M. Renfrew and Yvonne M. Renfrew for Plaintiffs and Appellants.

Robert T. Yarbray, in pro. per., for Defendant and Appellant.

Lobb Cliff & Lester, Mark S. Lester, Robert J. Mitchell and Orlando J. Villalba for Defendant and Respondent.

## Opinion

**PERLUSS, P. J.**—Following a bifurcated bench trial the court found ComputerXpress.com, Inc. (ComputerXpress), Robert T. Yarbray, Wayne Nichols, Franklin Scivally and James L. Rather liable for the malicious prosecution of a civil action in Riverside County and awarded $700,000 in general damages for emotional distress and $2.41 million dollars in punitive damages in favor of Lee Jackson, Barbara Jackson, John Fecteau, Carol Fecteau and Thomas Mitchell, individually, and Thomas Mitchell, as the personal representative of the Estate of Doran Mitchell (collectively Jackson parties).[1] The Jackson parties appeal, contending the trial court erred in concluding they failed to prove Best Best & Krieger LLP (BB&K), counsel

---

[1] Doran Mitchell, the wife of Thomas Mitchell, was initially one of the plaintiffs in the malicious prosecution action. She died after the filing of the complaint but prior to trial. Her

for ComputerXpress for part of the time the Riverside action was pending, had acted with malice and, therefore, was not liable for malicious prosecution. They also contend the court erred in denying any recovery as special damages for attorney fees and expenses incurred in defending the Riverside action because those fees were recoverable in connection with the Jackson parties' partially successful special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16.[2] Yarbray also appeals from the judgment, contending the trial court erred in finding him the alter ego of ComputerXpress and the joint and several punitive damage award against him is improper and excessive. In addition, Yarbray challenges the court's liability finding on several grounds. We affirm the judgment in favor of BB&K. We affirm the balance of the judgment as it relates to liability, but reverse the compensatory damage award in part and remand the matter to the trial court to determine the amount of attorney fees and costs properly recoverable as special damages by the Jackson parties.

## FACTUAL AND PROCEDURL BACKGROUND

1. *The Riverside County Action*

    a. *ComputerXpress's complaint*

As described in a well-known opinion from the Fourth Appellate District, Division Two, reversing in part the trial court's order denying the Jackson parties' special motion to strike pursuant to section 425.16 and remanding the matter for determination of an award of fees and costs to them (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993 [113 Cal.Rptr.2d 625] (*ComputerXpress*)), the Riverside action was initiated by ComputerXpress following an unsuccessful effort to merge the company with businesses owned by the Jackson parties. (*Id.* at p. 998.) In a complaint filed in March 2000 ComputerXpress, a publicly traded company selling computer-related products, alleged during negotiations in February 1999 the Jackson parties had falsely represented their businesses were profitable, causing ComputerXpress to incur expenses and waste time. Based on these allegations the complaint asserted causes of action for fraud, negligent misrepresentation and negligence (counts 1, 2 and 3). ComputerXpress also alleged the Jackson parties entered into a conspiracy beginning in May 1999 to damage ComputerXpress's reputation and to cause it economic harm. In furtherance of that conspiracy, ComputerXpress alleged, the Jackson parties had made numerous false and disparaging statements about ComputerXpress on the

---

estate's representative (Thomas Mitchell) substituted in as plaintiff. For simplicity the collective term "Jackson parties" is used to refer to all six of these parties without differentiating between the time before and after Doran Mitchell's death.

[2] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

Internet and elsewhere to existing and potential customers and investors. Based on these allegations the complaint asserted causes of action for trade libel, interference with contractual relations, interference with prospective economic advantage, abuse of process, conspiracy and injunctive relief (counts 4–9). (*Ibid.*) At the time it filed its complaint, ComputerXpress was represented by Nichols.

b. *The special motion to strike*

On June 13, 2000 the Jackson parties filed a special motion to strike the complaint and each of its causes of action pursuant to section 425.16, commonly referred to as an anti-SLAPP motion.[3] ComputerXpress's opposition was filed by Nichols on June 30, 2000. The following month BB&K substituted into the action as counsel for ComputerXpress and filed a supplemental opposition to the motion to strike. Thereafter, the trial court denied the motion, concluding none of the nine causes of action fell within the scope of section 425.16. (*ComputerXpress, supra,* 93 Cal.App.4th at p. 997.) Accordingly, the court did not consider whether ComputerXpress had established a probability of prevailing on its claims. (*Ibid.*)[4]

The Court of Appeal agreed the three causes of action relating to the Jackson parties' alleged misrepresentations during the failed merger discussions and the cause of action for interference with contract relations, based on their purported disparaging statements made directly to a company that had contracted with ComputerXpress, did not occur in connection with an official proceeding or arise from protected activity involving a public issue or issue of public interest. (*ComputerXpress, supra,* 93 Cal.App.4th at p. 1000.) However, the court held the Jackson parties had met their threshold burden by showing the remaining causes of action, which involved false and disparaging statements about ComputerXpress allegedly published on the Internet, the filing of a complaint against it with the Securities and Exchange Commission (SEC) and the posting of the SEC complaint on the Internet, all arose from protected speech or petitioning activity within the meaning of section 425.16. In particular, the court found the Internet postings, which included statements that the officers and directors of a publicly traded corporation were illegally

---

[3] SLAPP is an acronym for "strategic lawsuit against public participation." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

[4] In ruling on a defendant's special motion to strike, the trial court uses a "summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].) This is a two-step process: The defendant must first show the challenged claims arise from protected activity (§ 425.16, subd. (b)(1)); if the defendant carries that burden, the plaintiff must demonstrate a probability of prevailing on the claim. (§ 425.16, subd. (b)(3); see *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

conspiring to manipulate the value of its stock, were made in connection with an issue of public interest because the subject matter was of concern to a large number of investors and potential investors. (See *id.* at pp. 1007–1008.)

Turning to the second prong of the section 425.16 analysis, the appellate court held ComputerXpress had failed to demonstrate a probability of prevailing on any of the causes of action properly subject to the special motion to strike. Specifically, the court noted ComputerXpress had not identified which of the numerous Internet postings included in the record were actionable and, in any event, found none of them would satisfy the requirements for trade libel (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1011) and none could support a claim for interference with prospective economic advantage (*id.* at p. 1014). The remaining three claims were also found to be without any merit. (*Id.* at pp. 1014–1016.)

The Court of Appeal then held (following further briefing and reargument on the issue after the Jackson parties petitioned for rehearing) the Jackson parties were entitled to attorney fees and costs under section 425.16, subdivision (c), as the prevailing moving parties on a special motion to strike, concluding the fact they were only partially successful should reduce but not eliminate their entitlement to attorney fees: "Defendants consequently are entitled to recover attorney fees and costs incurred in moving to strike the claims on which they prevailed, but not fees and costs incurred in moving to strike the remaining claims. The trial court may determine the appropriate amount of fees and costs, upon a proper application by defendants." (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1020.)

### c. *Proceedings on remand*

Following remand from the Court of Appeal, the Jackson parties moved for summary adjudication on the fifth cause of action (tortious interference with contractual relations).[5] On February 20, 2002 Marvin Zinman replaced BB&K as counsel for ComputerXpress. On behalf of ComputerXpress Zinman filed a notice of nonopposition to the motion, which the court granted on March 13, 2002.

In late February 2002 the Jackson parties filed a memorandum of costs, seeking $300,720 in attorney fees (using a lodestar multiplier of 2.0), $9,203.77 in expenses and $1,511.62 in other costs relating to its partially successful motion to strike. The declaration of Yvonne M. Renfrew filed in support of the application for attorney fees stated she had worked 444.60 hours in connection with the Jackson parties' appeal from the denial of their

---

[5] The remittitur issued on January 17, 2002.

special motion to strike and no more than 15 hours of that total could properly be attributed to time devoted exclusively to matters on which they Jackson parties failed to prevail (that is, exclusively to issues relating to counts 1, 2, 3 and 5). ComputerXpress moved to tax costs, and the Jackson parties filed an opposition. The court heard the matter on April 30, 2002 and awarded the Jackson parties $77,000 in attorney fees. The record on this appeal, as voluminous as it is, contains no copy of any order reflecting this award. (Counsel for the Jackson parties has indicated no written order memorializing this fee award exists.) However, a notice of ruling prepared by Zinman recites the award of $77,000 was "for attorney's fees in connection with legal services at the trial level and on appeal."

On June 30, 2002 ComputerXpress dismissed all remaining claims in the Riverside action. The dismissal purported to be "without prejudice."

### 2. *The Malicious Prosecution Action*

On September 12, 2002 the Jackson parties, again represented by Ms. Renfrew, filed their complaint for malicious prosecution, conspiracy to deprive them of their civil rights in violation of title 42 United States Code section 1985 and violation of their rights under the Unruh Civil Rights Act (Civ. Code, § 51.7). A first amended complaint for malicious prosecution only was filed March 25, 2003; and the operative pleading, a second amended complaint for malicious prosecution, was filed July 14, 2003. By this time the case was assigned for all purposes to Judge Elihu M. Berle in Department 42 of the Los Angeles Superior Court.

The second amended complaint, which named ComputerXpress, BB&K, Yarbray, Nichols, Zinman, Scivally and Rather as defendants,[6] alleged the Riverside action was instituted and thereafter prosecuted by ComputerXpress and the other defendants, including Yarbray and BB&K, without probable cause, maliciously and with improper purposes, including chilling and punishing the Jackson parties for the exercise of their rights of free speech and petition. As to Yarbray, the pleading specifically alleged he was and continued to be the alter ego of ComputerXpress. It further alleged Yarbray "was actively instrumental in the institution and the prosecution" of the Riverside action. The complaint sought both compensatory and punitive damages.

Aurora Precious Metals, Inc., identifying itself as "a corporation, formerly named ComputerXpress.Com, Inc.," and Yarbray jointly answered the unverified second amended complaint with a general denial and asserted as

---

[6] Two individual BB&K attorneys, Douglas Stewart Phillips and G. Henry Welles, previously substituted for Does 1 and 2 in the first amended complaint, were also named as defendants in the second amended complaint. Phillips and Wells were dismissed from the action prior to trial.

affirmative defenses their reliance on the advice of counsel in proceeding with the Riverside action, no favorable termination, lack of malice and the existence of probable cause. The other defendants filed similar answers.

Following discovery and extensive pretrial motion practice, the parties waived a jury; and the malicious prosecution action was ultimately tried as a long-cause matter before Judge Robert H. O'Brien. The issue of the amount of punitive damages, if any, was bifurcated from the issues of liability and compensatory damages.

### 3. *The In Limine Rulings on Attorney Fees as Special Damages*

Prior to trial—and before the case was transferred to Judge O'Brien—BB&K moved in limine for an order precluding introduction of evidence relating to the amount of attorney fees and costs incurred by the Jackson parties in the Riverside action in connection with their special motion to strike and the subsequent appeal. BB&K argued the amount of reasonable fees and costs for the motion and appeal had been determined by the trial court in the Riverside action and the resulting fee award reduced to a money judgment against some of the defendants in the malicious prosecution action. That determination, BB&K asserted, was binding under the doctrines of res judicata and collateral estoppel. BB&K's motion attached as an exhibit the notice of ruling prepared by Zinman, reciting the trial court had awarded $77,000 in fees for legal services in the trial court and on appeal.

The Jackson parties filed an opposition to the BB&K motion and filed their own motion in limine, seeking an order excluding from trial any evidence of the fee award actually made in the Riverside action, as well as any evidence to the effect the Jackson parties had failed to enforce that award and, therefore, had failed to mitigate their damages.

Following additional briefing on the two motions, as well as on other, unrelated in limine motions filed by the parties, the court on September 3, 2004 granted BB&K's motion to preclude evidence of the actual amount of attorney fees incurred by the Jackson parties in successfully moving to strike certain claims in the Riverside action pursuant to section 425.16, "except as to attorneys' fees awarded for the SLAPP motion," and denied the Jackson parties' motion to exclude evidence of the amount of that fee award. Explaining his reasoning at the hearing on the motions, Judge Berle stated, "I believe that it is binding as collateral estoppel, if not probably even res judicata since the other action is completed and there is a final judgment. There is a final determination of that issue on the attorneys' fees for the SLAPP motion. And I would say to the extent that there are other expenses that were not covered by the motion, certainly that the plaintiff can argue

about those other damages. But anything encompassed within that motion, there has already been a determination and that determination is binding."

Judge Berle further emphasized he was not making "any specific determinations on the amounts of what was included here." Counsel for the Jackson parties then inquired how the court would determine the extent of the earlier fee order. The court responded, "We will have a hearing as to the admissibility of the evidence. If there is an argument as you say—and I assume you are going to introduce evidence of damages, and then defendants are either going to say the evidence is admissible or object. The defendants will say, 'Wait a minute. Those types of damages are within the scope of the previous award.' "

On September 13, 2004 the Jackson parties filed a motion for reconsideration of the court's orders on the in limine motions regarding attorney fees, arguing in part that their counsel, Ms. Renfrew, had only discovered several days earlier that the file in the Riverside action contained no actual court order that could serve as the predicate for applying the doctrine of collateral estoppel. In a supporting declaration Ms. Renfrew also stated the Jackson parties had never received any payment on account of a fee award in the Riverside action. In its opposition to the motion for reconsideration, BB&K submitted a copy of the reporter's transcript for the hearing held in the Riverside action on April 30, 2002, which reflected the court's decision to reduce Ms. Renfrew's fee request to 100 hours for legal services on the special motion to strike in the trial court and 120 hours in the appellate court at an hourly rate of $350 for a total fee award of $77,000. On October 19, 2004 the court denied the motion for reconsideration.

### 4. The Trial Court's Liability Determination and Award of Compensatory Damages

#### a. The trial court proceedings and the statement of decision

Trial on issues of liability and compensatory damages began on January 13, 2006 and continued through February 9, 2006. Neither ComputerXpress nor Rather appeared at trial. The court issued a tentative decision on March 13, 2006, which found in favor of the Jackson parties against all remaining defendants other than BB&K, awarded compensatory damages and found by clear and convincing evidence that ComputerXpress, Yarbray, Scivally, Nichols and Rather were also liable to the Jackson parties for punitive damages.

On March 23, 2006 the Jackson parties filed a 52-page request for statement of decision pursuant to section 632, which identified 200 factual

and legal issues (many with multiple subparts) for the court to address. In addition, the Jackson parties filed a 29-page document captioned "Proposals and Objections Re Tentative Decision." Yarbray and Scivally also filed requests for a statement of decision.

On April 10, 2006 the court filed its proposed statement of decision, which essentially adopted its tentative decision with minor changes. The Jackson parties then filed objections to the proposed statement of decision, asserting it "failed to address either adequately or all" item Nos. 31 through 147 in their request for statement of decision. Yarbray also objected to the proposed statement of decision. On May 1, 2006 the court adopted its proposed statement of decision as the statement of decision.

b. *Issues of liability*

The court's statement of decision identified four principal issues in the case with respect to liability. First, was there a favorable termination of the Riverside action? The court concluded there was, observing that five of the nine claims were dismissed on appeal pursuant to the Jackson parties' special motion to strike, which necessarily included a determination those claims lacked merit. Although the remaining four claims were dismissed by ComputerXpress (one only after a motion for summary adjudication had been granted), the court determined these dismissals were effectively terminations on the merits as opposed to terminations for other purposes. The court also found that each of the defendants "was actively instrumental in commencing and/or continuing the Riverside case against each plaintiff herein."

Second, did the defendants have probable cause to file and pursue the Riverside action? The court made detailed findings regarding the structure and history of the various corporations involved in the initial dealings between the Jackson parties and ComputerXpress and its principals. For purposes of the present appeal, the only relevant finding is the determination that Yarbray was the alter ego of ComputerXpress "and all of its progeny." The court then concluded there was no probable cause for any defendant to prosecute or maintain the sixth, seventh, eighth or ninth causes of action (all of which were ordered dismissed by the Court of Appeal pursuant to the special motion to strike) as to any of the Jackson parties and, in a separate section of its statement of decision, no probable cause to initiate or continue any of the claims in the lawsuit against Barbara Jackson, Doran Mitchell or John and Carol Fecteau. As to Lee Jackson and Thomas Mitchell, even though the court found there was probable cause to believe they made Internet postings relating to ComputerXpress, the court ultimately concluded the evidence failed to establish the factual or legal tenability of the claims asserted.

Third, did the defendants act with malice in pursuing the action? The court concluded ComputerXpress, Yarbray, Rather, Scivally and Nichols had acted with malice in the initiation and continuation of the Riverside action: "[T]he broad scope of the meritless lawsuit was initiated and pursued to overwhelm, intimidate and bully [the Jackson parties]." According to the court's statement of decision, e-mails introduced at trial revealed the defendants' frustration at reading the Internet postings relating to ComputerXpress, prompting them to "rashly embark[] on the misguided lawsuit in an attempt to silence Mr. Jackson and Mr. Mitchell": "With the exception of BB&K, the various e-mails among the defendants clearly show a malicious intent to bring the lawsuit against all plaintiffs."

Fourth, did the nonattorney defendants establish an advice-of-counsel defense? Rejecting Yarbray's claim he had merely delegated the matter to "the lawyers," the court found, "without any semblance of discerning the broad claims as to each defendant he caused to be sued, he was the one who spearheaded the lawsuit for motives unrelated to any legitimate claim of harm." As to the other defendants, the court rejected their conclusory testimony they had relied on counsel, explaining they failed to establish by a preponderance of the evidence the required elements of the defense.

c. *Damages*

Citing the testimony from several of the Jackson parties, the court found they had incurred a total of $379,000 in attorney fees in defending against the maliciously prosecuted Riverside action. That sum, the court ruled, must be reduced by the $77,000 judgment for attorney fees they had already received in that case. The court also found all the Jackson parties, except Thomas Mitchell on behalf of the Estate of Doran Mitchell, were entitled to recover emotional distress damages. (The court explained the Jackson parties were entitled to recover for emotional distress due to being improperly sued, not for distress resulting from their underlying financial condition resulting from the failed plans to be involved with ComputerXpress.) The court awarded a total of $700,000 in emotional distress damages: $150,000 each to Barbara Jackson, Lee Jackson, John Fecteau and Thomas Mitchell and $100,000 to Carol Fecteau.

The court also found by clear and convincing evidence that ComputerXpress, Yarbray, Scivally, Nichols and Rather had acted with malice for the purpose of establishing the Jackson parties' right to punitive damages. The court stated it would prepare a proposed judgment after the completion of the trial in the punitive damages phase of the case.

### 5. *Punitive Damages and the Issue of Attorney Fees Revisited*

The court trial on punitive damages was held on April 27 and 30, 2007, following several additional pretrial court proceedings. On May 24, 2007 the court entered its ruling on punitive damages. Following extended skirmishing over the need for a statement of decision and the applicability of section 632 and California Rules of Court, rule 3.1590 to a bifurcated trial limited to the amount of punitive damage, the court "recast" its May 24, 2007 order as a tentative decision, thereafter adopted its tentative decision as the proposed statement of decision following a request for a statement of decision by Yarbray and finally on August 7, 2007 signed and issued its "statement of decision—punitive damage phase."

In the statement of decision the court explained its method of evaluating the defendants' financial condition and ability to pay and observed with respect to Yarbray that his credibility had been and remained an issue throughout the trials. The court awarded a total of $2.4 million in punitive damages—$400,000 to each of the six Jackson parties—against ComputerXpress, Yarbray, Scivally and Rather, explaining the punitive damage award to each of the six plaintiffs "is on the low end of any percentage of compensatory damage measurement," when compared to the compensatory damages suffered by that individual. The court also noted Nichols had settled this aspect of the case and was not part of the court's punitive damage award.[7]

In a minute order also issued on August 7, 2007 the court reported its continuing concern "about the issue of amount and scope of attorneys fees." Shortly thereafter the court set a September 21, 2001 hearing date to consider the matter. On September 7, 2007 BB&K filed and served an extensive set of documents directed to the attorney fee issue, essentially providing Judge O'Brien with the materials previously presented to Judge Berle in connection with the competing in limine motions and the motion for reconsideration, as well as excerpts from the reporter's transcript of those proceedings. Ms. Renfrew subsequently declared that the only copy of the BB&K filing apparently served on her was sent by mail, not by any of the means reasonably calculated to ensure delivery not later than the close of the next business day after filing, as contemplated by section 1005, subdivision (c), and further declared that she was unaware of the filing when she attended the hearing on September 21, 2007.

At the hearing on September 21, 2007, following oral argument directed primarily to the meaning of Judge Berle's earlier rulings, but which also

---

[7] Nichols stipulated at trial to entry of a judgment against him—joint and several liability for any compensatory damages awarded by the trial court and $10,000 in punitive damages.

revisited the question whether a written order for attorney fees had ever been entered in the Riverside action and the adequacy of the evidence presented in support of BB&K's in limine motion, the court determined that no attorney fees from the Riverside case could be recovered as special damages in the malicious prosecution action. Although the court's explanation is not as clear as it might be, in no small part because counsel for both sides seemed unable to focus on the issue of apportionment that concerned Judge O'Brien, it appears the court determined it was the Jackson parties' burden to allocate their total attorney fees between legal services covered by the earlier fee award and those not included in that award. Having failed to present any evidence on that point, Judge O'Brien concluded, they were not entitled to any fees as damages.

On October 9, 2007 the court signed and entered an order after completion of bifurcated trial, amending the May 1, 2006 statement of decision to exclude the attorney fee recovery. As recited in that order, "The Court has decided that Judge Berle has previously rejected Plaintiffs' theory of attorney fee recovery attributable to the Riverside trial. This Court adopts that decision." By the same order, the court rejected the Jackson parties' request for a new statement of decision.

On October 9, 2007 the court also signed and entered its judgment after completion of bifurcated trial. Pursuant to that judgment, the Jackson parties recovered nothing against BB&K, and BB&K was awarded its costs of suit. The Jackson parties, except for Thomas Mitchell as the representative of the Estate of Doran Mitchell, recovered a total of $700,000 in compensatory damages for emotional distress; each of the six Jackson parties recovered $400,000 in punitive damages, jointly and severally, from ComputerXpress, Yarbray, Scivally and Rather, and a total of $10,000 in punitive damages from Nichols, pursuant to the parties' stipulation. The Jackson parties were also awarded their costs of suit against those defendants found liable to them.

The Jackson parties and Yarbray each moved for a new trial and to vacate or set aside the October 9, 2007 judgment. The court denied the motions on December 3, 2007. The Jackson parties and Yarbray filed timely notices of appeal.

## CONTENTIONS

The Jackson parties contend the trial court erred in precluding any recovery for attorney fees and expenses incurred in defending the Riverside action and finding they had not proved BB&K acted with malice in connection with its involvement in that case. They also contend the trial court failed to properly respond to their requests for a statement of decision. Yarbray contends the

trial court erred in finding him the alter ego of ComputerXpress, he was shielded from liability for malicious prosecution by his reliance on the advice of counsel, there was no favorable termination of the Riverside action and the award of punitive damages against him was excessive. Neither ComputerXpress itself nor any other defendant found liable by the trial court has appealed from the adverse judgment.

## DISCUSSION

1. *The Trial Court Erred in Precluding Any Recovery by the Jackson Parties for Attorney Fees Incurred in Defending the Riverside Action*

A malicious prosecution action provides a remedy for a party that has "suffered out of pocket loss in the form of attorney fees and costs, as well as emotional distress and injury to reputation because of groundless allegations made in pleadings which are public records." (*Sagonowsky v. More* (1998) 64 Cal.App.4th 122, 132 [75 Cal.Rptr.2d 118].) "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made . . . . The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees [citations], compensation for injury to his reputation or impairment of his social and business standing in the community [citations], and for mental or emotional distress . . . ." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50–51 [118 Cal.Rptr. 184, 529 P.2d 608] (*Bertero*).)

Having established the liability of ComputerXpress and the remaining defendants other than BB&K, the Jackson parties were entitled to recover as part of their compensatory damage award the costs of defending the Riverside action including their reasonable attorney fees. (*Bertero, supra*, 13 Cal.3d at p. 51; *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1412 [69 Cal.Rptr.3d 561] ["plaintiff who successfully asserts a malicious prosecution claim can obtain reasonable attorney fees incurred defending against the prior action"].) " 'The special damage to the plaintiff therefore is the amount which he has been compelled to expend or incur in his defense, but he can only recover such part thereof as constitutes a

necessary and reasonable charge, the latter question being one to be determined from the evidence.' " (*Stevens v. Chisholm* (1919) 179 Cal. 557, 564–565 [178 P. 128].)[8]

Notwithstanding a successful malicious prosecution plaintiff's right to recover for reasonable attorney fees incurred in the underlying litigation, the trial court ultimately ruled the judgment in favor of the Jackson parties should not include any such award. That conclusion rested on four intermediate steps:

1. The determination in the Riverside action that $77,000 was the reasonable value of legal services provided by Ms. Renfrew in connection with the successful portion of the Jackson parties' anti-SLAPP motion is binding in their subsequent malicious prosecution action under the doctrine of collateral estoppel.

2. Because the trial court in the Riverside action awarded the Jackson parties the reasonable value of those legal services, no portion of the fees incurred for those services is recoverable in the malicious prosecution action.

3. It was the Jackson parties' burden to prove they incurred attorney fees for legal services not covered by the earlier fee award.

4. Because the Jackson parties testified only that they incurred a total of $379,000 in attorney fees in defending the Riverside action and presented no evidence allocating any portion of those fees to services not included in the earlier fee award, they were not entitled to any fees as damages.

Most of the parties' briefing and argument, both in the trial court and on appeal, have concentrated on the first point—the collateral estoppel effect of the earlier fee award. We agree in substantial part with the trial court's conclusion the Jackson parties may not relitigate their entitlement to additional fees for services included within that award. However, each of the other elements of the court's analysis of the Jackson parties' right to recover attorney fees is flawed and requires reversal of the judgment. In addition, the court's errors created confusion as to the proper procedure to try the attorney fee issue.[9] Accordingly, remand for a limited retrial is necessary.

---

[8] *Stevens v. Chisholm, supra,* 179 Cal. at page 564, was cited by the Supreme Court in *Bertero* to support its observation that reasonable attorney fees are recoverable as special damages in a malicious prosecution case.

[9] The lack of proper procedural guidance may be attributable in part to the transfer of the case to a new judge for trial as a long cause matter after the rulings on the in limine motions.

a. *The fee award following a successful special motion to strike will generally preclude further litigation concerning the reasonable value of the legal services covered by that award*

■ Under section 425.16, subdivision (b)(1), a defendant may move to strike the entire complaint or one or more causes of action "arising from any act . . . in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." If the plaintiff cannot demonstrate a probability of prevailing, the trial court must strike the challenged causes of action and award the defendant attorney fees and costs. (§ 425.16, subd. (c); *Varian Medical Systems, Inc. v. Delfino, supra,* 35 Cal.4th at p. 186; see *Doe v. Luster* (2006) 145 Cal.App.4th 139, 143 [51 Cal.Rptr.3d 403].) "[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735].)

As the Court of Appeal held in *ComputerXpress, supra,* 93 Cal.App.4th at page 1020, even if the special motion to strike is granted only as to some claims, the partially successful defendant is entitled to attorney fees. The lack of success on other claims is relevant to the amount of, but not the right to, fees. (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 345 [42 Cal.Rptr.3d 607].) However, only those attorney fees and costs related to the special motion to strike, not the entire action, may be recovered under section 425.16, subdivision (c). (See, e.g., *S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 381 [46 Cal.Rptr.3d 380, 138 P.3d 713] ["the fee 'provision [under § 425.16] applies only to the motion to strike, and not to the entire action' "]; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1383 [46 Cal.Rptr.2d 542] [legislative history of § 425.16 "clearly show[s] the Legislature intended that a prevailing defendant on a motion to strike be allowed to recover attorney fees and costs only on the motion to strike, not the entire suit"].)

■ In awarding fees the trial court is not constrained by the amount sought by the successful moving parties (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 361 [42 Cal.Rptr.2d 464]), but is obligated to award "reasonable attorney fees under section 425.16 [that] adequately compensate[] them for the expense of responding to a baseless lawsuit." (*Id.* at p. 362; accord, *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830].) The fees awarded should include services for all proceedings, including discovery initiated by the opposing party pursuant to section 425.16, subdivision (g), directly related to the special motion to strike. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1248 [132 Cal.Rptr.2d

57] [affirming award of attorney fees including fees incurred in opposing discovery request and motion for reconsideration]; *American Humane Assn. v. Los Angeles Times Communications* (2001) 92 Cal.App.4th 1095, 1104 [112 Cal.Rptr.2d 488] [documentation for attorney fee motion should include "the total cost of the special motion to strike and any related discovery permitted by the court"]; see *Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 446 [121 Cal.Rptr.2d 275] ["statute is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating herself from a baseless lawsuit"].)

In determining the fee award pursuant to section 425.16, the court may utilize the lodestar method addressed in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] and in appropriate cases may include a fee enhancement for the purpose of compensating the attorney for contingent risk, exceptional skill or other factors. (*Ketchum v. Moses, supra*, 24 Cal.4th at pp. 1136, 1138.)

■ Once the court has decided the amount of attorney fees that adequately compensates the defendants in the underlying lawsuit for their efforts in moving to strike the complaint under section 425.16, relitigation of that specific issue—that is, the reasonable value of that portion of the total attorney fees incurred in the underlying action that relate to the successful special motion to strike—in a subsequent malicious prosecution action will usually be precluded by the doctrine of collateral estoppel (or "issue preclusion"); for, as to that narrow issue, all five threshold requirements for application of the doctrine are satisfied: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223]; accord, *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943 [38 Cal.Rptr.3d 220, 126 P.3d 1040]; see also *Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 346 [29 Cal.Rptr.2d 314] ["[a]lthough a second action between the parties on a different cause of action is not barred by res judicata, nevertheless '. . . the first judgment "operates as an estoppel or conclusive adjudication as to such issues in the second action as were *actually litigated and determined in the first action*" ' "].)

The Jackson parties advance several arguments to avoid any collateral estoppel effect from the earlier fee award. First, they insist the issue of

attorney fees as damages in a malicious prosecution action is not the same as the question of reasonable attorney fees following a successful special motion to strike (and thus was not actually litigated or necessarily decided in the prior action). If their point is simply that the attorney fees incurred in the Riverside action included fees for services unrelated to the successful portions of the anti-SLAPP motion (for example, the motion for summary adjudication following remand from the Court of Appeal), they are correct; and nothing in the earlier award forecloses their recovery of those additional fees. But to the extent they seek recovery in the malicious prosecution action for fees incurred in successfully pursing the special motion to strike, the issue of the reasonable value of those fees has been finally determined (rejecting a 2.0 multiplier requested by Ms. Renfrew and apparently reducing by approximately one-half the total number of hours claimed at her normal hourly rate).

If, on the other hand, the Jackson parties are asserting the fee determination pursuant to section 425.16, subdivision (c), is different from assessing the fees recoverable as special damages in a malicious prosecution action because the former is limited by a reasonableness standard while the latter is not, they are simply wrong. As discussed, the awards in both situations are measured by the reasonable attorney fees incurred—either the reasonable attorney fees incurred to obtain a dismissal by filing an anti-SLAPP motion (see, e.g., *Robertson v. Rodriguez, supra,* 36 Cal.App.4th at p. 361) or the reasonable attorney fees incurred to defend against a meritless lawsuit (see, e.g., *Bertero, supra,* 13 Cal.3d at p. 51; *Stevens v. Chisholm, supra,* 179 Cal. at pp. 564–565).

Second, the Jackson parties contend the fee award in the Riverside action was not "actually litigated" because it was decided on declarations (primarily the declaration of their counsel, Ms. Renfrew, who described her legal services on behalf of her clients at some length) following submission of a memorandum of costs claiming the fees and a motion to tax costs filed by ComputerXpress. According to the Jackson parties, it is "well settled" the outcome of a motion decided without oral testimony cannot give rise to collateral estoppel precluding relitigation of the same issue in an ensuing suit. The single case cited for this proposition in the Jackson parties' opening brief, *Groves v. Peterson* (2002) 100 Cal.App.4th 659 [123 Cal.Rptr.2d 164], however, involved efforts to set aside a default and default judgment for lack of proper service of process. The court expressly limited its holding to that particular context—a limitation nowhere acknowledged by the Jackson parties: "In the specific context of the present case, where the issue is whether the prior denial of a motion in the underlying case to set aside a default and default judgment should be given collateral estoppel effect so as to bar a subsequent independent action in equity to set aside the prior judgment, a long line of cases has established a rule that such prior order *does not* collaterally estop the subsequent action." (*Id.* at p. 667.)

■ The reason for limiting collateral estoppel in this context, as explained by the *Groves* court, is that information needed to decide the merits of the request to set aside the default may well require compelled testimony from the opposing party regarding its efforts to serve the summons and complaint. (See *Groves v. Peterson, supra,* 100 Cal.App.4th at pp. 667–668.) In marked contrast, the question of the reasonable amount of attorney fees incurred by a prevailing party in litigation is typically determined based on declarations submitted by the parties and their counsel, as it was here. Absent exceptional circumstances indicating there was no opportunity for a full presentation of the issue in the context of the motion for fees, such a determination meets the "actually litigated" requirement for application of collateral estoppel. (See *Barker v. Hull* (1987) 191 Cal.App.3d 221, 226 [236 Cal.Rptr. 285] ["while the party urging the estoppel must prove that the issue was actually litigated and that evidence was not *restricted,* he need not establish that any particular type of evidence, such as oral testimony, was presented"]; see also *Benasra v. Mitchell* (2002) 96 Cal.App.4th 96, 113 [116 Cal.Rptr.2d 644] [" 'collateral estoppel should not be applied if there was no opportunity for a full presentation of the issue in the first proceeding' "].)

Finally, the Jackson parties dispute the existence of any legally cognizable order from the Riverside action awarding them fees. Without such an order, they insist, there can be no collateral estoppel. We disagree. The reporter's transcript of the hearing on the fee request, together with the notice of ruling from the Riverside action, is sufficient to confirm the existence of an order awarding $77,000 in fees. As we discuss below, any difficulty in proving what services were intended to be covered by that fee award that may result from the absence of a written order will be borne in the first instance by the defendants, not the Jackson parties.

> b. *It is the defendant's burden in a malicious prosecution action to challenge the plaintiff's evidence of attorney fees by demonstrating those fees are unreasonable or apportioning the fees to unrecoverable legal services*

■ Testimony or properly admitted documentary evidence of the attorney fees incurred to defend a maliciously prosecuted action constitutes a prima facie case of that element of special damages. Absent contrary evidence, it must be assumed those fees were reasonable. (See *Stevens v. Chisholm, supra,* 179 Cal. at p. 565.)

As reflected in the trial court's May 1, 2006 statement of decision, the Jackson parties introduced competent, credible evidence they had incurred a total of $379,000 in attorney fees in defending against the maliciously prosecuted Riverside action. ComputerXpress and the other defendants were

entitled to challenge the reasonableness of the attorney fees claimed by demonstrating that a specific portion of those fees was for legal services covered by the fee award in the Riverside action and thus, by virtue of the collateral estoppel effect of that prior fee award, limited to a total recoverable value of $77,000.[10] It was the defendants' burden, however, not the Jackson parties', to prove such an allocation, just as it generally is the burden of the defendant in a malicious prosecution action to prove certain attorney fees incurred in the underlying action are not recoverable because they are attributable to claims that had been properly pursued. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 690 [34 Cal.Rptr.2d 386, 881 P.2d 1083] [any difficulty in apportionment of damages between theories of liability that are and are not supported by probable cause "is chargeable to the tortfeasor"]; *Bertero, supra*, 13 Cal.3d at p. 60 [burden of apportionment of harm that flowed from proceedings on maliciously prosecuted cross-action based on the same theories as a protected affirmative defense "must rest with the party whose malicious conduct created the problem"]; see also *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1033–1034 [90 Cal.Rptr.3d 1, 201 P.3d 1147] ["Under California tort law, a set of injuries for which the damages are indivisible is treated the same as a single injury: the tortfeasor is liable for the entirety of the damages. . . . [¶] . . . [¶] *Bertero*'s holding applies here. If, in the underlying federal action, the State had not been liable for damage from subsurface leakage . . . , then the burden of proving what part of the remediation cost was attributable to leakage would have rested with the State, not with the federal court plaintiffs."].)

At the September 3, 2004 hearing on the in limine motions, Judge Berle specifically advised the defendants it was their burden to raise the apportionment issue. Asked by counsel for the Jackson parties how the court would determine the extent of the earlier fee order, the court explained it was up to the defendants to object to the plaintiff's evidence of attorney fees as damages on the ground it was within the scope of the prior award. Yet none of the defendants objected or presented any evidence attempting to apportion the total $379,000 in attorney fees between legal services attributable to the claims dismissed pursuant to the special motion to strike and other legal services. In denying any recovery because the Jackson parties failed to apportion their total attorney fees between legal services covered by the earlier fee award and those not included in that award, the court appears to have disregarded the procedures established for the trial of this case and, more importantly, incorrectly reversed the burden of proof on this issue.

█ Even if viewed as an issue of reasonableness of the attorney fees incurred by the Jackson parties, rather than a question of allocation or

---

[10] If they were able to do so, the defendants also could have introduced evidence to show the fees incurred for legal services not included within the prior fee award were unreasonable.

apportionment, the defendants failed to meet their burden of proof. As the Supreme Court noted in approving an instruction on attorney fees as damages in *Bertero, supra*, 13 Cal.3d at pages 59 to 60, footnote 7, the plaintiff is entitled to " 'such sum as will reasonably compensate [him] for his expenses including attorneys' fees paid by him in successfully defending against the claim asserted . . . .' " However, while the burden of proving the extent of injury, including attorney fees, actually incurred as a result of a defendant's tortious conduct lies with the plaintiff, the burden of proving the plaintiff failed to act reasonably in limiting his or her consequential damages—that is, failed to mitigate damages—is on the defendant in a malicious prosecution action, as it is in any other tort action. (See, e.g., *Carnation Co. v. Olivet Egg Ranch* (1986) 189 Cal.App.3d 809, 816–817 & fn. 9 [229 Cal.Rptr. 261] [established rule in California is that burden of proof is on the breaching party or tortfeasor regarding mitigation]; *Hunter v. Croysdill* (1959) 169 Cal.App.2d 307, 318 [337 P.2d 174] ["[t]he burden of proving facts in mitigation of damages rests upon the defendant"]; see generally Judicial Council of Cal. Civ. Jury Instns. (2009) CACI No. 3930 ["[i]f you decide [*name of defendant*] is responsible for the original harm, [*name of plaintiff*] is not entitled to recover damages for harm that [*name of defendant*] proves [*name of plaintiff*] could have avoided with reasonable efforts or expenditures"].)

      c.   *Special damages in a malicious prosecution action properly include the reasonable value of legal services covered by an earlier unpaid fee award*

■ Without doubt the Jackson parties may not recover more than once for the reasonable attorney fees incurred defending the Riverside action: A plaintiff is entitled only to a single recovery of full compensatory damages for a single injury. (See, e.g., *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 754 [98 Cal.Rptr.3d 268]; *Neubauer v. Goldfarb* (2003) 108 Cal.App.4th 47, 52 [133 Cal.Rptr.2d 218] ["if one joint tortfeasor satisfies a judgment against all joint tortfeasors the judgment creditor cannot obtain a double recovery by collecting the same judgment from another of the tortfeasors"].)
■ The Jackson parties do not contend otherwise. But there was no suggestion in the trial court that the earlier fee award had been paid—indeed, the only information presented was that it had not. Given that fact, the court erred in concluding, apparently to avoid a double recovery, that the fee award against ComputerXpress in the Riverside action precluded the Jackson parties from recovering as special damages in the malicious prosecution action any fees included within the scope of the earlier order.

■ ComputerXpress was the sole plaintiff in the Riverside action and the only party obligated to pay the fee award in that case. The other

defendants found liable for malicious prosecution—Yarbray, Rather, Scivally and Nichols—remain responsible as joint tortfeasors for all damages suffered by the Jackson parties; and the Jackson parties had the right to pursue them separately from any claim against ComputerXpress: "If one be injured by a tortious act, he is entitled to compensation for the injury suffered, and, if several persons are guilty in common of the tort, the injured one has his right of action for damages against each and all of the joint tort-feasors, and may at his election sue them individually or together." (*Butler v. Ashworth* (1895) 110 Cal. 614, 618–619 [43 P. 4]; accord, *May v. Miller* (1991) 228 Cal.App.3d 404, 410 [278 Cal.Rptr. 341].) Thus, the Jackson parties were entitled to a judgment against Yarbray, Rather, Scivally and Nichols awarding them the full amount of compensatory damages they proved at trial. To prevent a double recovery, the amount of compensation actually paid to an injured victim by one joint tortfeasor is properly set off or deducted from the award obtained from another. (See *Laurenzi v. Vranizan* (1945) 25 Cal.2d 806 [155 P.2d 633]; *Jhaveri v. Teitelbaum, supra*, 176 Cal.App.4th at p. 741; *May*, at p. 410.) But the trial court erred in ruling at the outset of trial that the Jackson parties' recovery from these defendants would be limited to attorney fees not included within the earlier award.

■ Determining the proper measure of damages against ComputerXpress itself is essentially no different. The award of attorney fees pursuant to section 425.16, subdivision (c), in the Riverside action and the recovery of special damages, including attorney fees, in the malicious prosecution case are cumulative remedies, rather than inconsistent or alternative ones. Following a successful special motion to strike, the trial court in that case must award the moving party the reasonable attorney fees that will adequately compensate the moving party for the expenses associated with the anti-SLAPP motion. (*Ketchum v. Moses, supra*, 24 Cal.4th at p. 1131; *Wilkerson v. Sullivan, supra*, 99 Cal.App.4th at p. 446.) In the subsequent malicious prosecution action the successful plaintiff is permitted to recover all the costs of defending the prior action, including reasonable attorney fees. (*Bertero, supra*, 13 Cal.3d at p. 51.) To the extent there is an overlap in legal services covered by the two awards, the court properly requires a setoff to prevent a double recovery. (Cf. *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1173–1174 [2 Cal.Rptr.3d 408] [injured employee entitled to proceed against uninsured employer in both workers' compensation proceeding and superior court action for personal injury damages; double recovery prevented by statutory provision for credit against judgment for award in administrative proceedings].) However, the judgment in the malicious prosecution action should reflect the full amount of damages proved.

### d. *Remand for trial of recoverable attorney fees is necessary*

At the same time it granted BB&K's motion in limine to exclude evidence of the actual attorney fees incurred in successfully moving to strike claims in the Riverside action pursuant to section 425.16, "except as to attorneys' fees awarded for the SLAPP motion," the court granted the Jackson parties' motion in limine to prohibit the defendants from calling Ms. Renfrew as a witness, with the proviso the ruling was without prejudice to conducting an Evidence Code section 402 hearing on those issues about which defendants believed Ms. Renfrew should testify, "including attorney's fees arising out of the SLAPP motion." Thus, it appears the court anticipated the evidence at trial would be limited to testimony or documents showing (a) the Jackson parties had incurred fees with a reasonable value of $77,000 in pursuing their anti-SLAPP motion, and (b) the total of additional fees incurred in defending the Riverside action (for example, the successful motion for summary adjudication filed after remand from the Court of Appeal, as well as whatever other legal services were directed to the four claims that were not dismissed on appeal). It would then be up to the defendants to argue and/or prove fees sought under category (b) in fact belonged under category (a).

Rather than proceed in this manner, the Jackson parties presented evidence of their total attorney fees; and the defendants introduced no evidence at all regarding the earlier fee award, the extent of legal services covered by that award or the unreasonableness of any portion of the $377,000 incurred to defend the Riverside action.[11] Because neither side adhered to the trial court's procedural rulings and because those procedures were, in any event, based in part on the trial court's erroneous determinations regarding the legal significance of the earlier fee award, we remand the matter to the trial court to decide the amount of attorney fees and costs properly recoverable as special damages by the Jackson parties in a manner consistent with the views expressed in this opinion.

2., 3.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[11] Relying on language in the order granting its in limine motion, BB&K insists it had no obligation to challenge the Jackson parties' evidence of total attorney fees until they testified to the portion of the fees attributable to services not covered by the earlier fee award. For their part, pointing to Judge Berle's explanation of his ruling at the hearing on the in limine motions, the Jackson parties argue it was the defendants' obligation to object if they believed any portion of the fees sought was within the scope of the prior award.

[*]See footnote, *ante*, page 75.

## DISPOSITION

The judgment as to Best Best & Krieger LLP is affirmed in its entirety. The portion of the judgment awarding compensatory damages against ComputerXpress.com, Inc., Robert T. Yarbray, Wayne Nichols, Franklin Scivally and James L. Rather is reversed in part, and the matter remanded to the trial court for further proceedings not inconsistent with this opinion. In all other respects the judgment is affirmed.

Best Best & Krieger LLP is to recover its costs on appeal. Lee Jackson, Barbara Jackson, John Fecteau, Carol Fecteau and Thomas Mitchell, individually and as personal representative of the Estate of Doran Mitchell, are to recover their costs on appeal with respect to the issues raised by the appeal of Robert T. Yarbray.

Zelon, J., and Jackson, J., concurred.

A petition for a rehearing was denied November 30, 2009.