Filed 1/26/23  Jensen v. Charon Solutions CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PEACHES NONG JENSEN, | B320268 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC469884) |
| v. | |
| CHARON SOLUTIONS, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Affirmed.

Henry J. Josefsberg for Defendants and Appellants.

Law Offices of Yvonne M. Renfrew and Yvonne M. Renfrew for Plaintiff and Respondent.

\* \* \* \* \* \*

This is the fourth appeal between one or more parties to a real estate deal that dates back to 2000, that spawned two lawsuits in 2008 as well as a malicious prosecution lawsuit in 2011, and that has been ping-ponging between the trial court and this court for over a decade. The last time around, we affirmed the finding of liability in favor of the malicious prosecution plaintiff, reversed the compensatory damages award due to a prejudicial evidentiary error in the plaintiff's proof of out-of-pocket litigation costs, and conditionally affirmed the punitive damages award. The retrial netted a smaller award of plaintiff's out-of-pocket litigation costs. This time around, the malicious prosecution defendants raise a panoply of challenges to the new damages award, none of which has merit. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

I.      Facts

A.      *The parties and their business plan*

Peaches Nong Jensen (Jensen) and Perry Segal (Segal) used to be close friends.

In 2000, they agreed to develop a luxury home for sale, drawing upon Jensen's expertise as a real estate broker and Segal's expertise in construction. Jensen already owned a parcel of land in Woodland Hills (the property), and resided in a house on one portion of the property. Jensen and Segal agreed they would sever the property into two smaller parcels, and develop a new luxury home for sale on the as-yet-undeveloped parcel. To effectuate their agreement, they formed P&P Holdings, LLC (the

LLC). The LLC had two members—namely, (1) Peachtree Financial Corporation (Peachtree), which was owned by Jensen; and (2) Charon Solutions, Inc. (Charon),[1] which was owned by Segal. Each member contributed $21,000 in starting capital to the LLC.

Jensen moved out of the house in 2004 and allowed Segal to rent her home at a discounted rate while he attended law school.

The project never got off the ground and, by 2005, Jensen and Segal's relationship soured.

## B. *Jensen's lawsuit against the property's prior owner*

In March 2004, Jensen suspected that the prior owner who sold her the property, Scott Silver, had not disclosed defects in the property. Jensen considered suing Silver; Segal advised against it, fearing that any litigation would impede the lot-split project they had envisioned for the property. Ignoring Segal's advice, Jensen forged ahead anyway and sued Silver; Silver then cross-claimed against Jensen. Combined, we refer to these actions as the *Silver* action.

In December 2005, Charon withdrew from the LLC, citing Jensen's failure to consult Segal regarding the *Silver* action and her unilateral decision to borrow against the property to fund that litigation. Segal then attempted to intervene in the *Silver* action, but his motion was denied.

Jensen ultimately settled the *Silver* action.

---

[1] This name ended up presaging the purgatory of eternal litigation that would follow, as Charon is the Greek name for the mythological ferryman who transports the dead across the River Styx to the Underworld.

**C.**    *Segal and Jensen sue each other over the failed project*

1.    *Complaints*

a.    By Segal and Charon

In December 2008, Segal and Charon sued Jensen and Peachtree for (1) fraud, based on (a) intentional misrepresentation and (b) suppression of facts, (2) breach of fiduciary duty, (3) conversion, (4) unjust enrichment, and (5) declaratory relief (the underlying lawsuit).[2]  In support of the unjust enrichment claim, Segal and Charon alleged that it was "inequitable" for Jensen and Peachtree "to receive and retain the funds they have received, accepted and retained," and requested that Segal and Charon's "interest in the Property" be "return[ed]."  In support of their declaratory relief claim, Segal and Charon alleged that the LLC obtained title to that portion of the property containing Jensen's home "by way of fraud," and requested that the court declare that Jensen and Peachtree own only the vacant portion of the property.

b.    By Jensen

Jensen and Peachtree filed a cross-complaint against Segal and Charon for (1) breach of contract, (2) negligence, and (3) fraud.

2.    *Resolution*

a.    Pretrial proceedings

In April 2009, the trial court dismissed on demurrer Segal and Charon's unjust enrichment and declaratory relief claims, reasoning that "[t]here is no unjust enrichment and nothing to declare."  The trial court also dismissed on demurrer Jensen and

---

[2]    They also named Jensen's husband as a defendant, but he later settled.

4

Peachtree's negligence and fraud claims. In their amended complaint, Segal and Charon dropped Peachtree as a defendant. And they later voluntarily abandoned the conversion claim.

### b.  Trial

The former friends' dueling complaints proceeded to a jury trial on three claims—namely, (1) Segal and Charon's fraud claim, (2) their breach of fiduciary duty claim, and (3) Jensen and Peachtree's remaining claim for breach of contract.

Both sets of litigants lost, as the jury rejected all claims and awarded nothing.

## II.  Procedural Background

### A.  *Jensen's malicious prosecution lawsuit*

In September 2011, Jensen sued Segal and Charon (collectively, defendants) for malicious prosecution of the underlying lawsuit.[3] She sought (1) compensatory damages reflecting her out-of-pocket litigation expenses in defending against the underlying lawsuit, (2) emotional distress damages, (3) damages for injury to her professional reputation, and (4) punitive damages.

---

[3]  Jensen also sued the lawyers who represented Charon and Segal in the underlying lawsuit, but the trial court granted the lawyers' anti-SLAPP motions and dismissed her claims against them.

Peachtree was also a named plaintiff, but the trial court granted defendants' anti-SLAPP motion as to Peachtree, while denying it as to Jensen. The court then denied defendants' motion for summary judgment against Jensen for the same reasons it denied their earlier anti-SLAPP motion. We affirmed these rulings on appeal. (*Jensen v. Charon Solutions, Inc.* (Oct. 10, 2013, B240651) [nonpub. opn.].)

## B.    *First trial*

The malicious prosecution case proceeded to a jury trial in 2016.  The jury returned a verdict finding defendants liable and awarding Jensen (1) a general verdict of $1 million in compensatory damages; and (2) $500,000 in punitive damages, comprised of $250,000 against Charon and $250,000 against Segal.

## C.    *Appeal*

Defendants appealed.[4]  We affirmed the jury's finding of liability, but "reversed and remanded for a new trial on compensatory damages" because only two of defendants' claims in the underlying lawsuit were brought without probable cause (namely, the unjust enrichment and declaratory relief claims), yet the trial court permitted Jensen to introduce heavily redacted attorney fee bills that made it nigh impossible to break down Jensen's $400,163.51 attorney fees bills into fees for the claims brought with probable cause (for which malicious prosecution damages were unrecoverable) and fees for the claims brought without probable cause (for which malicious prosecution damages were recoverable); we concluded that the heavy redactions effectively precluded defendants from "conducting any meaningful cross-examination," and thereby denied them due process.  (*Jensen v. Charon Solutions, Inc.* (Dec. 20, 2017, B276050) [nonpub. opn.].)  We conditionally left the $500,000

_____

4    Simultaneously, Jensen filed a fourth lawsuit against defendants and their new attorney regarding enforcement of the money judgment she had obtained on her malicious prosecution claim.  We addressed the anti-SLAPP motion at issue in that proceeding in an unpublished opinion.  (*Jensen v. Josefsberg* (Oct. 16, 2018, B286094).)

6

punitive damages award intact, in the event the remanded proceedings resulted in a compensatory damages award in excess of $25,000.

### D. *Retrial on damages*

In September 2021, the parties proceeded to a six-day jury trial on the issue of compensatory damages.

The trial court carefully defined the "[s]ole" issues before the jury in the retrial—namely, (1) whether Jensen had been damaged by defendants' "act in maliciously prosecuting the causes of action for declaratory relief and unjust enrichment" and, if so, (2) "the amount of [Jensen's] damages and whether those damages can be apportioned among the acts of [d]efendants in filing the declaratory relief and unjust enrichment causes of action and other causes."

Jensen took the stand. She testified that (1) the possibility, arising out of the relief Charon and Segal sought in the underlying lawsuit, that she might lose her house (or some portion of the property she owned) had caused her "tremendous" distress because of her experience as a child refugee forced from her home in Vietnam; (2) defendants' filing of the unjust enrichment claim against her in the underlying lawsuit "trigger[ed] . . . distress" she had previously experienced from defendants' conduct in the *Silver* action; and (3) the allegations against her in the underlying lawsuit could ruin her career.[5]

Throughout the trial, the court consistently enforced the limits it had imposed upon the scope of the retrial—through vigilant regulation of what was admitted into evidence and

---

[5] Defendants do not contest the first and third categories of Jensen's testimony; their challenges in this appeal largely center on the second category.

7

through pinpointed jury instructions. Whenever questions put to Jensen by her attorney arguably transgressed the court's limits, the court cut off examination of Jensen and provided supplemental instructions to the jury reinforcing the narrower scope of the retrial. The court also prohibited Jensen from testifying that she could recover emotional distress damages for the claims in the underlying lawsuit that *were* brought with probable cause, rejecting her contention that those nonactionable claims had somehow been "incorporated by reference" into the actionable unjust enrichment and declaratory relief claims; the court concomitantly instructed the jury to disregard this "incorporation by reference" argument. Throughout the trial, the trial court also emphasized to the jury that (1) the only claims in the underlying lawsuit that could support Jensen's malicious prosecution damages were defendants' unjust enrichment and declaratory relief claims; and (2) Jensen could not recover damages for any emotional distress she suffered during the *Silver* action, and that her testimony regarding the *Silver* action was admissible "solely for the limited purpose" of showing how the emotional distress she experienced when defendants filed the unjust enrichment and declaratory relief claims had been "increased" by defendants' "acts or statements" in the *Silver* action.

The jury awarded Jensen compensatory damages of $447,300, comprised of (1) $7,300 in out-of-pocket litigation expenses incurred defending against the unjust enrichment and declaratory relief claims when they were "live" in the underlying lawsuit from December 2008 to April 2009, (2) $400,000 in emotional distress damages, and (3) $40,000 for reputational damages. Because the compensatory damages awarded met the

8

conditions articulated in the prior appeal, the trial court also reinstated the prior $250,000 punitive damages award against each defendant.

### E. *Motion for new trial*

Defendants filed a motion for new trial that raised several arguments, including the argument that Jensen's attorney had committed misconduct during the retrial. After further briefing and a hearing, the trial court denied the motion. Although the court found that Jensen's attorney had engaged in misconduct during the retrial that warranted reporting the attorney to the State Bar of California, the court found the misconduct not to be prejudicial because, in the court's view, it was not "reasonably probable that, absent this misconduct, [d]efendants would have achieved a different or more favorable result."

### C. *Appeal*

Defendants timely filed this appeal.[6]

## DISCUSSION

To prevail on a malicious prosecution claim, the plaintiff must prove that the underlying lawsuit "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [the] plaintiff's favor [citations]; (2) was brought

---

[6] Jensen filed a cross-appeal which we dismissed after she failed to timely file a combined respondent's brief and cross-opening brief by the deadline. (Cal. Rules of Court, rule 8.220(a).) Indeed, Jensen's briefing deadline was set by an order of this court that largely adopted the schedule proposed by Jensen after she had already been placed in default for not filing her brief by the original deadline. This court had an additional reason to dismiss Jensen's cross-appeal—namely, she failed to cure defects identified in the trial court's notice of noncompliance of default on appeal. (Cal. Rules of Court, rule 8.140(b).)

9

without probable cause [citations]; and (3) was initiated with malice." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 (*Bertero*).) During the retrial that is on appeal before us now, the trial court instructed the jury that these three elements had already been established (during the first trial and on appeal) as to defendants' unjust enrichment and declaratory relief claims in the underlying lawsuit. The retrial was therefore limited solely to the question of compensatory damages on Jensen's malicious prosecution claim.

Malicious prosecution gives rise to three categories of compensatory damages—namely, (1) the "'out of pocket loss'" the plaintiff "'suffered'" "'in the form of attorney fees and costs'" incurred to defend against the maliciously prosecuted claim(s), (2) emotional distress damages, and (3) damages for injury to the plaintiff's reputation arising from the "'groundless allegations made in pleadings[,] which are public records.'" (*Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 90 (*Jackson*); *Bertero*, *supra*, 13 Cal.3d at pp. 51, 59; *Carruth v. Superior Court* (1978) 80 Cal.App.3d 215, 219.)

In this appeal, defendants seek to attack the jury's award of attorney fees and emotional distress damages. They do so by raising challenges that we have grouped into four buckets—that is, challenges to (1) the court's evidentiary rulings, (2) the special verdict form, (3) the sufficiency of the evidence, and (4) the denial of the posttrial motion for new trial on the basis of attorney misconduct. In reviewing these challenges, we make all presumptions in favor of the judgment and endeavor to uphold the judgment "whenever possible." (*Bertero*, *supra*, 13 Cal.3d at p. 61.)

10

## I.    Evidentiary Rulings

In their briefing, defendants allude to a plethora of alleged evidentiary errors but do not support them with any reasoned argument.  Such issues are waived, and we decline to consider them.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)  Defendants sufficiently challenge only three of the trial court's evidentiary rulings—namely, (1) the court's admission of an exhibit reflecting Jensen's attorney fee bills for the *entire duration* of the underlying lawsuit (rather than those bills incurred prior to April 16, 2009, the date the actionable unjust enrichment and declaratory relief claims were dismissed on demurrer); (2) the court's exclusion of the special verdict findings made by the jury that heard the underlying lawsuit in 2008; and (3) the trial court's admission of Jensen's testimony regarding the *Silver* action and regarding other prior conduct by defendants.  We review these rulings for an abuse of discretion.  (*People v. Powell* (2018) 5 Cal.5th 921, 961; *People v. Flores* (2020) 9 Cal.5th 371, 409.)  Even if we conclude there was an abuse of discretion, we may not reverse unless it is reasonably probable that a result more favorable to defendants would have occurred absent the error.  (*People v. Thompson* (2022) 83 Cal.App.5th 69, 106; *People v. Young* (2019) 7 Cal.5th 905, 931; Cal. Const., art. VI; § 13; Evid. Code, § 353, subd. (b).)

### A.    *Admission of the entirety of Jensen's attorney fee bills (exhibit 60)*

At trial and over defendants' objection, the trial court admitted an exhibit that contained *all* of Jensen's attorney fee

11

bills, which came to more than $400,000. Jensen argued that she was entitled to recover *all* of her attorney fees. On appeal, defendants argue that the trial court erred in (1) admitting this exhibit *at all* because Jensen failed to lay the foundation for those bills, and (2) admitting any portion of the exhibit reflecting fees incurred after April 2009, which is when defendants' actionable unjust enrichment and declaratory relief claims—the only claims that could give rise to malicious prosecution damages—were dismissed.

Neither argument has merit.

Plaintiff laid a sufficient foundation for the attorney fees bills because the attorney who issued those bills laid the foundation when he testified; contrary to what defendants suggest, plaintiff did not *also* have to testify regarding the authenticity of the bills. (See *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269 (*Mardirossian*); Evid. Code, § 702.)

The trial court also did not prejudicially err in not limiting the exhibit to those attorney fees incurred before April 2009. To begin, it was not necessarily error because, as the trial court correctly noted, a malicious prosecution plaintiff is entitled to recover the *full* amount of attorney fees incurred unless and until the malicious prosecution defendant carries its burden of convincing the jury that the fees can be apportioned between the actionable fees (in this case, fees incurred in litigating defendants' unjust enrichment and declaratory relief claims) and the nonactionable fees (in this case, fees incurred in litigating the remaining claims in the underlying lawsuit). (*Jackson*, *supra*, 179 Cal.App.4th at pp. 95-96; *Bertero*, *supra*, 13 Cal.3d at p. 60; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 690 (*Crowley*).) Thus,

12

the court did not err in admitting the full amount of fees incurred subject to defendants demonstrating it was possible to apportion them. Further, defendants *succeeded* in apportioning the fees because the jury—from bills totaling more than $400,000—awarded Jensen only $7,300 in damages for her out-of-pocket, attorney fees expenses. Defendants assert that what the jury *really* did in awarding Jensen $400,000 in emotional distress damages was use the full amount of the attorney fees as the gauge for emotional distress damages, because Jensen's counsel urged the jury to do so. This assertion is not only based on pure speculation, but it also ignores that the trial court properly instructed the jury on what may be considered as out-of-pocket expenses and emotional distress damages, and also instructed the jury that the attorneys' arguments at trial are not evidence and are to be disregarded when they conflict with the witnesses' testimony. We presume that the jury dutifully followed those instructions. (*People v. Winbush* (2017) 2 Cal.5th 402, 457 (*Winbush*); *People v. Washington* (2017) 15 Cal.App.5th 19, 26 (*Washington*).)

**B.** ***Exclusion of jury's special verdict from trial of underlying lawsuit (exhibit 213)***

After changing its preliminary ruling a few times, the trial court ultimately excluded three questions from the special verdict form from the trial in the underlying lawsuit in which the jury made findings rejecting Jensen's breach-of-contract claim. The court based its ruling on Evidence Code section 352, finding the admission of the special verdict questions to be "more confusing than helpful to the jury." Defendants argue that this was error because, without the special verdict form, Jensen was able to testify to facts contrary to that jury's special verdict findings.

13

This argument also lacks merit.

To begin, the court's ruling under Evidence Code section 352 was not an abuse of discretion. That section grants trial courts broad "discretion" to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will," among other things, "create substantial danger . . . of confusing the issues." (Evid. Code, § 352.) The special verdict form itself had little probative value because the trial court elsewhere allowed defendants to elicit from Jensen on cross-examination the prior jury's answers to those verdict form questions. The trial court did not abuse its discretion in finding that the minimal probative value of the special verdict form itself was substantially outweighed by the danger that its admission would confuse the jury by opening the door to the scope of claims at issue in the underlying lawsuit as well as which claims had been sustained and which rejected—issues that the limited nature of the retrial had removed from the jury's purview. To the extent defendants allude to the trial court's errors in overruling some of the specific objections they made to Jensen's testimony where she testified to facts contradicting the special verdict findings, defendants have, as noted above, waived those arguments by failing to support them with reasoned analysis.

14

**C.** *Admission of Jensen's testimony regarding the* Silver *action*[7]

The trial court allowed Jensen to offer testimony about the emotional distress she experienced by virtue of defendants' conduct during the *Silver* action (including Segal's motion to intervene), but instructed the jury it could not award Jensen damages for that distress and could only consider that testimony to show how the distress she experienced *as a result of defendants' conduct in bringing the unjust enrichment and declaratory relief claims in this case* had been "increased" by virtue of her vulnerability to such distress caused by defendants' earlier conduct. Defendants argue that this testimony should have been excluded because it was (1) legally barred by (a) the statute of limitations, (b) judicial estoppel, because Jensen disavowed any intent to collect damages on the nonactionable claims when she successfully opposed defendants' motion for summary judgment, (c) the unavailability of a malicious prosecution claim based on a subpart of a lawsuit, such as a motion to intervene, and (d) the litigation privilege (Civ. Code, § 47); and (2) irrelevant, because Jensen was only entitled to recover damages for the two actionable claims that were part of the underlying lawsuit.

This argument lacks merit.

---

7 Defendants also argue that the trial court erred in allowing Jensen to testify about the emotional distress she suffered as a result of the nonactionable claims in the underlying lawsuit (namely, the fraud and breach of fiduciary duty claims). This argument is relegated to a footnote because it is foreclosed by the record, which shows that the trial court steadfastly shut down Jensen's (and her attorney's) attempts to discuss any distress she suffered from the nonactionable claims.

To begin, defendant's argument completely ignores that the trial court specifically and repeatedly instructed the jury that any emotional distress defendants caused Jensen during the *Silver* action was *not* recoverable; instead, that conduct was admitted only if Jensen connected any prior distress she suffered to proof that it made her extra fragile and susceptible to greater distress when defendants brought the two actionable claims in the underlying lawsuit without probable cause. Based on our review of the record, the trial court struck large swaths of Jensen's testimony that failed to draw that connection, frequently reminded Jensen's attorney to "tie in" how the parties' litigation history is relevant to the damages Jensen suffered from defendants' bringing the unjust enrichment and declaratory relief claims, and issued a limiting instruction to the jury directing it to use Jensen's testimony only for the discrete purpose of evaluating her predisposition to experiencing emotional distress from defendants' bringing those two claims without probable cause. Because the court did not permit the jury to consider this evidence as recompense for the emotional distress Jensen suffered in the *Silver* action, none of the legal bars defendants raise are implicated.

Defendants' relevance-based attack also fails because the law allows a jury to consider "the *effect*" of nonactionable conduct insofar as it may have an effect on the emotional distress that the malicious prosecution plaintiff suffered as a result of the actionable claims. (*Garcia v. Myllyla* (2019) 40 Cal.App.5th 990, 1000 (*Garcia*).) As with any other type of tort damages, a defendant takes the plaintiff as she is when it comes to emotional distress damages. (See *Golden v. Dugan* (1971) 20 Cal.App.3d 295, 311 [tortfeasor "must take his victim as he finds [her]"];

16

*People v. Taylor* (2011) 197 Cal.App.4th 757, 764 ["'[A] wrongdoer in criminal cases as in civil tort takes his victim as he finds [her].'"]; *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1226 [defendant's knowledge that plaintiff had special susceptibility to emotional distress is factor in determining whether conduct was outrageous for purposes of claim for intentional infliction of emotional distress].) Consequently, if a defendant's wrongdoing aggravates the plaintiff's existing emotional condition, the plaintiff can recover the full amount of her emotional distress damages. (*Hastie v. Handeland* (1969) 274 Cal.App.2d 599, 604; *Ng v. Hudson* (1977) 75 Cal.App.3d 250, 255, overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574; *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 168; CACI Nos. 3927 & 3928.) A jury can make this assessment only if it is permitted to know what past event makes the plaintiff "more prone to emotional distress" (and hence, what caused the aggravation of her current emotional distress), and that past event can sometimes be—as it was here—an event involving the defendant. (*Garcia*, at p. 1000.) Because the trial court in this case limited the admission of evidence regarding the *Silver* action to show why Jensen was more prone to aggravation by defendants of her emotional distress, this evidence was both relevant and properly admitted.

## II.    The Special Verdict Form

The jury during the retrial was presented with a special verdict form that, among others, posed the following two questions (and which the jury answered as follows):

> "[Question] 3[:]  Were there substantial factors other than defendants' malicious prosecution of the

17

[d]eclaratory [r]elief or [u]njust [e]nrichment causes of action which were a substantial factor in causing the damages you have found in response to question number 2?

"[Answer:] Yes.

"[Question] 4[:] Are you able to apportion the damages to Mrs. Jensen you have found between those caused by defendants' malicious prosecution of the declaratory relief or unjust enrichment causes of action and those caused by other factors?

"[Answer:] No."

Defendants argue that these two questions are defective, and that the verdict in Jensen's favor must be tossed. We disagree.

For starters, defendants waived their right to challenge the special verdict questions on appeal because they never objected to them before the trial court. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 131; *Mardirossian*, *supra*, 153 Cal.App.4th at p. 277 ["Because [defendant] did not challenge the special verdict form on this ground below, we do not consider it for the first time on appeal."].) Defendants' submission of a competing special verdict form does not by itself constitute an objection when defendants did not express any disagreement with the form ultimately used. And although this waiver rule has exceptions (e.g., *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 530 [no objection required when "'the record indicates that the failure to object was not the result of a desire to reap a "technical advantage" or engage in a "litigious strategy"'"]; *id.* at pp. 530-531 [no objection required when verdict was "fatally inconsistent"]), defendants have not argued that any exception applies here.

18

More to the point, the two special verdict form questions are consistent with the relevant law. To be sure, a malicious prosecution plaintiff bears the initial burden of proving that she was damaged, and those damages should be allocated to individual causes of action where it is possible to allocate. (*Singleton v. Perry* (1955) 45 Cal.2d 489, 498-499.) But the law places the burden on a malicious prosecution defendant—as "the party whose malicious conduct created the problem"—to demonstrate that allocation is possible. (*Bertero, supra*, 13 Cal.3d at p. 60; *Crowley, supra*, 8 Cal.4th at p. 690; *Jackson, supra*, 179 Cal.App.4th at p. 96.) These principles apply with equal force to emotional distress damages and out-of-pocket damages. (See *Crowley*, at pp. 688-690.) The special verdict questions here embody this law: Question 3 inquires whether Jensen met her initial burden, and question 4 asks whether defendants have carried *their* burden of proving that allocation is possible. Although the jury, in its answer to question 4, said allocation was not possible, its $7,300 award for out-of-pocket expenses indicates that allocation *was* possible for that category of damages; its inability to allocate emotional distress damages, however, reflects no more than *defendants'* failure to carry their burden. The verdict form is fine.

## III. Sufficiency of the Evidence

Defendants argue that the jury's $400,000 emotional distress award is not supported by sufficient evidence. We review a jury's damages award for substantial evidence. (*Myllyla, supra*, 40 Cal.App.5th at pp. 999-1000; *Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1208.) This is a notoriously deferential standard of review because, in asking whether the record contains evidence to support the award, we must view the

19

evidence in the light most favorable to the prevailing party as well as draw all reasonable inferences and resolve all conflicts in the evidence in support of the award.  (*Myllyla*, at p. 1000.)  Our review of emotional distress damages is even more deferential because, by definition, "there is no fixed or absolute standard by which to compute the monetary value" of this "extremely subjective and individualistic" form of damages.  (*Merlo v. Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 17; *Regan Roofing Co. v. Superior Court* (1994) 21 Cal.App.4th 1685, 1707-1708.)

Substantial evidence supports the jury's emotional distress award in this case.  Jensen testified that defendants' prosecution of their unjust enrichment and declaratory relief claims in the underlying lawsuit "drove [her] crazy," distressed her "tremendously," and made her "very upset."  Jensen explained that she was concerned that, if defendants prevailed on those claims, she would lose the property, which "brought back memories" of her emergency evacuation from Vietnam as a child and thus exacerbated her "anxiety and stress" at the possibility of being once again forced to uproot her life.  Jensen further testified that, in her job as a mortgage loan originator, she is regularly required to disclose the underlying lawsuit to lenders; to Jensen, doing so is like "a bad wound that keeps opening up."  Her distress, Jensen explained, has had physical manifestations—namely, she has been unable to sleep, hast lost weight, has lost her hair, and developed a "stress rash."  All of this evidence at trial amply supports the jury's emotional distress damages award.

Defendants marshal three arguments in response.

First, they argue that the jury's emotional distress award is inflated because it includes emotional distress Jensen suffered during the *Silver* action as well as the parties' history of other disputes.  As explained above, the factual premise of this argument is refuted by the record.  (*Winbush*, *supra*, 2 Cal.5th at p. 457; *Washington*, *supra*, 15 Cal.App.5th at p. 26.)

Second, defendants argue that the jury's $400,000 emotional distress award is so similar to the total amount of attorney fees Jensen incurred in litigating the whole underlying lawsuit (that is, just over $400,000) that the jury must have just taken a shortcut and used the total attorney fees award as a proxy for Jensen's emotional distress damages.  Defendants offer nothing in support of their theory beyond their speculation.  That is obviously not enough to invalidate the award where, as here, substantial evidence otherwise supports it.  (See *Diego v. City of Los Angeles* (2017) 15 Cal.App.5th 338, 349 ["An inference may not be based on speculation or surmise."]; see also *Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 508 ["There are no fixed or absolute standards by which an appellate court can measure in monetary terms the extent of [pain and suffering] damages suffered by a plaintiff as a result of the wrongful act of the defendant" and the "amount to be awarded is 'a matter on which there legitimately may be a wide difference of opinion.'"].)

Third, defendants argue that the jury's emotional distress award is based on Jensen's fear of losing *her home*, and that this fear is unsupported by the record because defendants—in the underlying lawsuit—sought only to take title to the portion of the property on which the luxury home was to be built and *not* the portion containing Jensen's home.  We reject this argument because the operative complaint alleged an entitlement to the

21

portion containing Jensen's home. Defendants claimed at trial that this was a "typo," but informing Jensen of a typo years after she read the complaint that caused her distress does not somehow erase that distress. A reasonable person in Jensen's position—particularly given the litigious history between her and Segal—would have a reasonable basis to interpret the allegations as a threat to her ownership of the property. Credited by a jury, Jensen's "anxiety" over possibly losing her home is sufficient to support an award of damages for emotional distress. (*Knutson v. Foster* (2018) 25 Cal.App.5th 1075, 1096.)

## IV.  **Attorney Misconduct**

Defendants argue that the trial court erred in denying their motion for a new trial. After finding that Jensen's attorney's misconduct was serious enough to report to the State Bar of California, defendants urge, the court could not possibly conclude that the misconduct was not prejudicial. We independently review a trial court's denial of a motion for new trial. (*Garcia v. ConMed Corp.* (2012) 204 Cal.App.4th 144, 149 (*ConMed*); *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802 (*Cassim*) [must examine "the entire case"].)

### A.  *Pertinent background*

Jensen's attorney engaged in misconduct during the retrial. Despite the trial court's unambiguous rulings that the damages at issue were limited to those arising from defendants' prosecution of their unjust enrichment and declaratory relief claims, Jensen's attorney repeatedly asked questions that invited Jensen to "launch[]" into unresponsive "narrative[s]" that ranged far beyond the scope of damages at issue during the retrial. Despite the trial court's admonition not to ask such free-ranging questions and expressions of "concern" "that the jury [was] being

22

misled" into believing that the case was about awarding emotional distress damages for *all* of defendants' conduct, Jensen's attorney did not change her questioning style or attempt to keep Jensen's answers more focused. During closing argument, Jensen's attorney seemingly tried to capitalize on Jensen's open-ended testimony and utterly ignored the scope of the retrial by explicitly urging the jury to "compensate [Jensen] for *all* of the damage" caused by the underlying lawsuit, not just the damages caused by the two claims defendants brought without probable cause, because defendants had incorporated by reference all of the allegations in the underlying lawsuit into their two maliciously prosecuted claims. The trial court found Jensen's attorney's flagrant and brazen violation of its prior rulings "shock[ing]," aimed at "intentionally misleading . . . the jury," and wrong under the law. In addition to the standard instruction informing the jury that the statements of attorneys are not evidence, the trial court also gave a supplemental instruction informing the jury that the substance of Jensen's attorney's specific arguments was improper.

In ruling on defendants' motion for new trial based on Jensen's attorney's trial conduct, the court found that the conduct constituted misconduct but found that it was not prejudicial. More specifically, the court observed that Jensen's attorney treated this court's prior opinion and the trial court's evidentiary rulings as advisory, violating their mandates whenever she disagreed with them. The court found the repeated and intentional nature of the misconduct sufficiently problematic to report to the State Bar of California. However, the court found that, in light of the court's many instructions and admonitions, it was not "reasonably probable that, absent th[e] misconduct,

23

[d]efendants would have achieved a different or more favorable verdict."

**B.    *Governing law***

A new trial may be granted on the basis of attorney misconduct.  (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 870 [attorney misconduct is an "irregularity" in the proceedings]; Code Civ. Proc., § 657, subd. (1) ["[i]rregularity in the proceedings" is a basis for a new trial].)  To obtain a new trial on this ground, however, the movant must show *both* (1) attorney misconduct, *and* (2) resulting prejudice.  (*ConMed*, *supra*, 204 Cal.App.4th at p. 149; *Martinez v. Dept. of Transportation* (2015) 238 Cal.App.4th 559, 568 (*Martinez*).)  Attorney misconduct is prejudicial if "it is reasonably probable" that the party "would have achieved a more favorable result in the absence" of the challenged misconduct.  (*Cassim*, *supra*, 33 Cal.4th at p. 802; accord, *Pilliod v. Monsanto Co.* (2021) 67 Cal.App.5th 591, 635 (*Pilliod*).)  Factors relevant to assessing prejudice include (1) the "nature and seriousness" of the misconduct; (2) the "general atmosphere," including the "judge's control" of the trial; (3) the likelihood that the misconduct actually prejudiced the jury; and (4) the "efficacy of objection or admonition under all the circumstances."  (*Sabella v. Southern Pac. Co.* (1969) 70 Cal.2d at 311, 320-321; *Pilliod*, at p. 636.)

**C.    *Analysis***

Applying the pertinent factors, we independently conclude that defendants were not prejudiced by the misconduct of Jensen's attorney during the retrial.

The "nature and seriousness" of the misconduct (the first factor) weighs in favor of a finding of prejudice.  Jensen's attorney repeatedly let Jensen wander during her testimony, refused to

24

tailor questions to better constrain Jensen's testimony, and "shocked" the trial court by making arguments that ignored prior court rulings. Indeed, the misconduct was serious enough that the trial court reported it to the State Bar of California.

The "general atmosphere," including the "judge's control" over the trial (the second factor), weighs heavily against finding prejudice. Contrary to what defendants argue, the trial court actively managed Jensen's attorney's behavior and mitigated the effects of her misconduct by repeatedly sustaining defendants' objections, repeatedly striking irrelevant portions of Jensen's testimony, and repeatedly issuing curative instructions. (Cf. *Martinez, supra*, 238 Cal.App.4th at p. 569 [concluding that defense counsel "simply ignor[ed] the trial judge's rulings," "made it inevitable that the jury would conclude it didn't have to pay attention to the trial judge," and "seriously diminished" the "authoritative force of [the judge's] instructions"].)

The likelihood that the misconduct actually biased the jury (the third factor) also weighs heavily against finding prejudice. Despite Jensen's attorney's attempts to get the jury to award Jensen damages for the full spectrum of defendants' litigation against her, the jury in this case seemed to faithfully follow the court's instructions by awarding only $7,300 in attorney fees rather than the more-than-$400,000 urged by Jensen's attorney. What is more, the total jury award in this case is *less* than the amount the prior jury awarded, further confirming that Jensen's attorney did not whip up the jury into a frenzy of sympathy and passion. (Cf. *Martinez, supra*, 238 Cal.App.4th at p. 569 [likelihood of actual prejudice greater where the outcome was uncertain and the misconduct pushed the jury in one direction]; see also *Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 296-

25

297 [factor weighed against prejudice when strong evidence supported plaintiff's claims and therefore the misconduct was "neither so pervasive nor so egregious that it prevented the jury from rationally considering the evidence admitted at trial"].)

The efficacy of the court's admonitions (the fourth factor) is a closer call, but on balance weighs against prejudice. The trial court was "shocked" by counsel's rebuttal argument on a legal position the court had discussed with counsel "numerous times" throughout the trial, and the court characterized counsel's argument as "intentionally misleading," suggesting she disregarded the court's instructions. But the jury necessarily rejected the improper argument made by Jensen's attorney because it ultimately apportioned Jensen's out-of-pocket litigation costs and awarded emotional distress damages that are supported by the record. This outcome shows that the trial court's curative instructions and admonitions were effective in countering counsel's misconduct.

Defendants resist this conclusion with two further arguments.

First, they argue that this court has an independent obligation to recognize all misconduct, even when it was not objected to during trial. To the extent defendants are suggesting we have a duty to comb through the record looking for instances of misconduct not brought to our attention, they are wrong. And to the extent defendants are suggesting we must recognize the misconduct to which objections were properly raised, that argument is beside the point because we have accepted the trial court's finding of attorney misconduct.

Second, defendants argue that two cases compel reversal on the basis of attorney misconduct. They are wrong. In *Simmons*

26

*v. Southern Pacific Transportation Company*, the court ruled that a new trial was warranted because counsel had engaged in a "campaign of hate, vilification and subterfuge for the sole purpose of prejudicing the jury against defendant," and because there was instructional error.  (*Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 351-361.)  The misconduct in this case was not nearly as egregious and would be the sole viable basis for a new trial.  And *Hassett v. Olson* (2022) 78 Cal.App.5th 866 does not deal with a new trial motion at all.  Instead, *Hassett* upheld an order disqualifying counsel who, in his previous employment as a judge, had ruled on disputes regarding the same property at issue in the case.  (*Id.* at p. 868.)  The language from *Hassett* excerpted by defendants is accordingly inapt.

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ

27