Filed 3/5/24  Gann v. Vines CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GREGG GANN et al., | |
| Plaintiffs and Respondents, | G062556 |
| v. | (Super. Ct. No. 30-2021-01184693) |
| HENRY ELLSWORTH VINES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Donald F. Gaffney, Judge.  Affirmed.

Henry Ellsworth Vines, in pro. per., for Defendant and Appellant.

The Torrey Firm, Rebecca L. Torrey, Judd Grutman; Kaplan Weiss, Jonathon Kaplan and Yitz E. Weiss for Plaintiffs and Respondents.

Attorney Henry Ellsworth Vines appeals from a judgment entered against him following a jury trial. He contends (1) claim and issue preclusion support reversal; (2) the evidence is insufficient to support the judgment; (3) the trial court erroneously excluded evidence of other litigation between the parties; and (4) the court erroneously refused to give the jury his proposed deliberation instructions. We affirm because Vines has not carried his burden to show prejudicial error.

FACTS

I. *Context*

The underlying judgment was entered based on the jury's verdicts for two causes of action: interference with contractual relations and intentional infliction of emotional distress. They were alleged by Westview Services, Inc., a public benefit corporation, and Gregg Gann, who acted at all relevant times as Westview's chief executive officer and president (collectively plaintiffs).

At the outset of litigation, Ned Leiba was named as a defendant. He was a director on Westview's board of directors and a client of attorney Vines, during relevant times. Leiba settled with plaintiffs five days before trial, but participated as a witness.

Gann's employment by Westview[1] began more than 20 years ago, when he stepped in to lead it through a time of operational crisis. According to Vines's briefing, "[a] major disagreement started" between Gann and Leiba "in late 2018" and culminated in a series of events in 2019, when Westview was deciding Gann's employment for the next year. On June 13, 2019, either one or two sessions of a Westview board meeting happened, depending on who is asked. According to plaintiffs, only one session

---

[1] We distinguish between Westview and its board of directors only when necessary.

2

occurred, where a vote was completed to remove Leiba as a director. Under this version of events, the meeting ended at noon.

According to Vines, on the other hand, the vote did not effectively terminate Leiba's directorship, so Leiba and another director conducted a second session and voted to expand board membership by an additional five members. Vines applied to become one of the new directors.

At the purported second session, Leiba and the other director signed a "notice of termination of [Gann's] employment agreement" (capitalization omitted) that was purportedly delivered to Gann. At trial, Vines disputed his involvement with the notice, whereas Leiba testified that Vines assisted in drafting the document "to a degree."

Six weeks after the termination notice, Vines sent a letter to Gann (the July letter) that included, among other things, a draft of a complaint to the California Attorney General about plaintiffs (the attorney general complaint), in essence asserting that Gann had usurped the board's powers, set unreasonable compensation for himself, and planned corporate action not in Westview's best interests. Among other things, the letter contained the following statements: "If you oppose the addition of the five new directors[2], then I need to advise you that I have been in contact with the California Attorney General's (CAG) office regarding our concerns at Westview. I am attaching draft copies of the complaints that I have been preparing to file with both the CAG and the Superior Court of California."

According to Vines, he submitted the attorney general complaint at the end of July, within one day of the July letter. Two weeks later, Vines and Gann met at an

_____

2    Vines stated earlier in the letter: "I am one of those new five [b]oard members."

3

office and discussed Gann's future relationship with Westview, among other things (the office meeting). The parties disputed at trial the details of what occurred there.

## II. *The Derivative Action*

Six days after the office meeting, Vines filed a lawsuit he drafted on behalf of Leiba, to pursue a derivative action against Gann, in the name of Westview's interests (the derivative action). The essence of the allegations was that Gann's compensation was unreasonably high and his conduct furthered his personal interests at Westview's expense.

Gann's initial response to the derivative action included a special motion to strike based on the anti-SLAPP (strategic lawsuit against public participation) statute. (Code Civ. Proc., § 425.16.) The trial court in that case denied the motion, concluding Gann had not shown the derivative action was based on conduct (by Gann) that was protected by the anti-SLAPP statute. In 2021, we affirmed the denial order based on the same conclusion. (*Leiba v. Gann* (June 3, 2021, G058922) [nonpub. opn.].)

## III. *Judgment for Plaintiffs In This Litigation*

Twenty-one months after our opinion in the derivative action appeal, a five-day trial for this litigation was conducted. As noted, the jury returned two verdict forms, finding in plaintiffs' favor on both the contract interference cause of action (in favor of Westview and Gann) as well as the intentional infliction of emotional distress cause of action (in favor of Gann). In addition to compensatory damages, the jury awarded against Vines $6,750 in punitive damages to Westview and $1,700 to Gann. Judgment was ultimately entered against Vines for $181,700 plus interest in favor of Gann, and $51,865 in favor of Westview, plus interest and costs of $31,412. Before entry of judgment, Vines made an unsuccessful oral motion for a judgment notwithstanding the verdicts. He timely appealed.

4

DISCUSSION

As noted, Vines asserts four contentions to reverse the judgment.  To each we apply "three fundamental principles of appellate review:  (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error.  [Citations.]"  (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58 (*Fladeboe*).)

The three principles dovetail with another:  it is an appellant's duty to demonstrate a miscarriage of justice through adequate analysis and citation to the record.  (Cal. Const., art . VI, § 13; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*) [appellate burden of persuasion]; Cal. Rules of Court, rule 8.204(a) [contents of appellate briefs]; see *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) ["'The absence of cogent legal argument . . .  allows this court to treat the contention as waived'"].)  We apply the principles to each of Vines's contentions in turn.

I.  *Claim Preclusion and Issue Preclusion*

Vines contends for the first time on appeal that the doctrines of claim and issue preclusion should be applied in this case because we affirmed the denial of the anti-SLAPP motion in the derivative action, *Leiba v. Gann, supra*, G058922.  We decline to exercise our discretion to excuse the forfeiture (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275-1276, fn. 3), but briefly explain why the asserted ground would be irrelevant to our analysis even if it had been properly preserved for appellate review.

Vines's preclusion theories provide him no support because our ground for affirming the anti-SLAPP ruling in the derivative action was not the same as the grounds

5

he asserts for a reversal here.  (See *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club* (2006) 140 Cal.App.4th 1120, 1123 ["when a trial court judgment decides a case on two alternate grounds, and the appellate court affirms based on one ground, the judgment is binding under principles of res judicata and collateral estoppel only on the ground addressed by the appellate court"].)  In the derivative action, we agreed with the trial court on a narrow conclusion that Gann had not shown the conduct he was being sued for was protected by the anti-SLAPP statute—i.e., petitioning or free speech activity.  (*Leiba v. Gann, supra*, G058922.)  Contrary to Vines's interpretation, we did not reach any issue about whether a prima facie showing of meritorious claims was made by Leiba's derivative action lawsuit.  (See *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1026-1027.)

Vines's preclusion theories in this appeal have no relevance to whether Gann engaged in protected activity so he cannot demonstrate a mutual issue that was actually litigated.  (*Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 93 [five issue preclusion elements].)  He separately does not demonstrate any final judgment on the merits in the derivative action that could serve as the basis for claim preclusion.  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  Accordingly, his preclusion theories would fail even if he had properly preserved them for our review.

II. *Evidence Sufficiency*

Similarly, for the reasons discussed below, Vines's briefing has forfeited his evidence insufficiency contention, which would fail on the merits in any case.  His general position is that there was no evidence "to show that [he] did anything other than [properly] act as an attorney."

In his reply brief on appeal, Vines argues, "Nothing happened as [Gann] and his attorneys claimed to the jury."  The argument improperly attempts to portray the

trial evidence in a light of credibility favorable to his view of events.  (See *People v. Sanchez* (2003) 113 Cal.App.4th 325, 330 ["It is the exclusive function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence"]; see also *Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143 [when factual determination is attacked for evidence insufficiency "'the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination'"].)

Vines also argues it was "legally 'absolutely impossible' to truthfully claim that [he] did anything wrong."  Vines cites to Gann's testimony about the office meeting, which plaintiffs presented to the jury as an example of Vines improperly forcing Gann to either accept certain demands or face the filing of the attorney general complaint.  Vines asserts the portrayal of such a "contingent threat" was factually impossible because it reversed the true order of events,[3] and argues the false portrayal of the office meeting was "[t]he only basis" for Gann's claim of "emotional distress."

Vines fails to establish that the only factual ground the jury could have based its essential findings on was a threat at the office meeting.  He presents no discussion on what cause of action element is negated if his argument is true.  More fundamentally, he fails to discuss all of the material evidence that was presented to the jury.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [where appellate

_____

[3] Vines's quotation of Gann's testimony includes the following:  "Mr. Vines just reminded me to make sure that I understood that the message was either I allowed him and the other four people onto the board or he would be making a complaint to the attorney general accusing me of embezzling funds, of diverting funds to myself, and they would be prosecuting that and he would be suing me under a complaint he had drafted."  Vines asserts he had already filed the attorney general complaint 11 days before the meeting.

7

contentions turn on factual issue subject to substantial evidence review, failure to brief all material evidence forfeits contention]).  For example, even after plaintiffs cite to Leiba's trial testimony in their briefing, to counterargue that "[t]he notice of termination [of Gann's employment] was drafted by Leiba with assistance of and review by Vines," Vines provides no meaningful discussion about any of Leiba's testimony.  And on the order of events surrounding the attorney general complaint Vines drafted, he does not respond to plaintiffs' discussion about the July letter that Vines sent to Gann, more than a week *before* the office meeting.  As quoted earlier, it discussed the attorney general complaint as not yet filed.  In other words, Vines does not demonstrate that other conduct he engaged in—i.e., outside of the office meeting—could not have provided a factual ground for the jury's findings.

"'We are not bound to develop appellants' arguments for them.'"  (*Cahill, supra*, 194 Cal.App.4th at p. 956.)  Based on the absence of discussion in his briefing, Vines's evidence insufficiency contention fails.

III.  *Evidentiary Rulings*

Next, Vines argues the trial court abused its discretion by not allowing him to present the jury with evidence about the derivative action.  We disagree.

In his briefing, Vines repeatedly refers to the purported error as "the trial judge's gag order," without citing to an actual ruling that categorically excluded such evidence.  Instead, Vines quotes from a proceeding conducted before opening statements were made to the jury.  There, the judge discussed plaintiffs' motion to "exclude all evidence of the derivative action" in a manner that directly contradicts Vines's claim of a gag order.  Specifically, following an unreported "mini[-]opening" by counsel to potential jurors, the judge said:

8

"I think it's accurate to say that [plaintiffs'] counsel expressed some concerns regarding things [Vines] had said. The court indicated much of what the court had heard with regards to any reference to the derivative action or a handicap [Vines] has or his brother has or giving his fees on contingency to -- or whatever he does with them don't appear to be relevant to the court and that the court would caution the jurors if such things are said that what the parties are saying is not evidence.

"The court advised both sides the court thought it would be unfortunate if I had to repeatedly give that caution in front of the jury as the jury would certainly catch on as to what was happening and that would not be to the benefit of the party for whom that cautionary instruction was being given, *but I am not at this moment -- I can't in this context exclude evidence in a vacuum. I don't know how such evidence might be presented such that it would end up being relevant.* I certainly had great difficulty imagining the relevance of [Vines's] alleged handicap, I don't see how it could possibly be relevant to the causes of action that are pending, but that may go more to my lack of imagination than anything else.

"*So until evidence is attempted to be presented, I don't think I can simply make a broad ruling to exclude certain things. When that evidence is attempted to be submitted, [plaintiffs'] counsel can certainly make the necessary objection. The court will rule accordingly.*" (Italics added, capitalization omitted.)

Vines also cites the trial court's entry in its minutes about the motion: "Court is in session, reported and out of the presence of the jury, with plaintiff(s), defendant(s) and counsel present as noted above. The court and counsel discuss plaintiff's motion to exclude all evidence of derivative action. Oral argument heard." (Capitalization omitted.)

9

As seen from the above quotations, Vines's citations do not contain a single objection to a ruling he claims prejudiced him as a matter of evidence. (See Evid. Code, § 354 [preservation of evidence exclusion issue].) Generally, "[a] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct" (*People v. Partida* (2005) 37 Cal.4th 428, 435) and, unless excused, "an appellate court will not consider a claim of error if an objection could have been, but was not, made in the lower court. [Citation.]" (*People v. French* (2008) 43 Cal.4th 36, 46.) "'[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error.' [Citation.]" (*Ibid*.)

Vines provides one citation to specific evidentiary rulings made during his own testimony about the July letter. The cited record contains three instances of the trial court striking his cross-examination testimony. To illustrate, in the final instance, the following occurred:

"[Plaintiffs' counsel]: And are you saying that you were not thinking when you wrote the letter?

"[Vines]: Nope. I'm saying, as you can see, it's cc'ed to . . . Leiba. I was being directed by what . . . Leiba, my client, wanted to have done and also following the California Attorney General's suggestions.

"[Plaintiffs' counsel]: I move to strike that answer as nonresponsive.

"THE COURT: Pause. Everything after the word, 'no,' will be stricken as nonresponsive. The word 'no' remains."

10

Vines's sole record citation, followed by a single conclusory sentence about it,[4] does not carry Vines's burden to demonstrate either an isolated miscarriage of justice or his general claim that the trial court imposed a gag order regarding the derivative action. (Cal. Const., art . VI, § 13; *Denham, supra*, 2 Cal.3d at p. 564.) Contrary to Vines's portrayal of proceedings, we agree with plaintiffs' reading of the record as showing the court specifically left *open* for trial the question of whether Vines would be able to discuss certain topics in front of the jury, depending on the specific issues that arose. The approach was sound and, because Vines fails to meaningfully discuss any particular instance where the court prejudicially prohibited discussion about the derivative action, he has failed to show the court abused its discretion.

IV. *Jury Instructions*

Finally, Vines contends the trial court erroneously rejected his proposed jury instructions. His briefing specifies three form instructions that plaintiffs do not dispute were refused by the court: CACI Nos. 406, 2507, and 3933.

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) Although we view the evidence in a light most favorable to an appellant for this issue (*Viner v. Sweet* (2004) 117 Cal.App.4th 1218, 1225), "the refusal of a proper instruction is [reversible as a] prejudicial error only if '"it seems probable" that the error "prejudicially affected the verdict" [citations]' [citation.]" (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685). It remains an appellant's burden to demonstrate a

---

[4] The entirety of Vines's discussion of the citation is that "[w]hen issues related to [his] representation or working with the California Attorney General would come up, these statements would be quickly objected to with the judge sustaining and striking."

11

miscarriage of justice. (*Soule, supra*, 8 Cal.4th at p. 580 [instructional error not automatically reversible].)

In his briefing section titled "Rejection of all Appellant's Jury Instruction[s]," Vines simply quotes the instruction forms without providing a single citation to legal authorities to support his position. In contrast, plaintiffs present specific counterarguments. First, they argue the proposed instruction based on CACI No. 2507, titled "'Substantial Motivating Reason' Explained," pertains to a concept only relevant to the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), which they assert was not at issue at trial. Vines does not respond in his reply brief so we conclude he has conceded the point. (*Johnson v. English* (1931) 113 Cal.App. 676, 677 ["[a]ppellant, by failing to file a reply brief, concedes that respondent's position is unassailable"].)

The remaining two instructions, based on CACI Nos. 406 and 3933, sought to instruct the jury to assign comparative responsibility between Vines and Leiba for any harm found.[5] Plaintiffs counterargue that Vines "cites to no legitimate evidence or offers

_____

[5]      As provided in the record, the proposed version of CACI No. 406 stated: "[Gann] claims that the conduct of [Leiba] and [Vines] contributed to [Gann]'s harm. To succeed on this claim, [Gann] must prove both of the following: [¶] 1. That [Leiba] and/or [Vines] were at fault; and [¶] 2. That the wrongful conduct of [Leiba] and/or [Vines] were a substantial factor in causing [Gann]'s harm. [¶] If you find that the wrongful conduct of more than one person including [Leiba] and/or [Vines] was a substantial factor in causing [Gann]'s harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. These percentages must total 100 percent. [¶] You will make a separate finding of [Gann]'s total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility."

12

of proof at trial supporting a claim that other tortfeasors, including Leiba, acted improperly or caused [plaintiffs'] harm." They go further by asserting that "the evidence presented [at trial] supports a contrary conclusion, that [Vines] acted without Leiba's authority or knowledge, and outside the scope of his representation, thereby bearing all responsibility himself."

Vines does not provide any direct response to the points in his reply brief, and again does not present a single legal authority on the issues implicated by the two forms. (*Johnson v. English, supra*, 113 Cal.App. at p. 677.) Equally problematic, Vines fails to meaningfully discuss why we should conclude that the lack of the proposed instructions should be deemed prejudicial under applicable case law, even assuming error occurred. (*Cahill, supra*, 194 Cal.App.4th at p. 956.) He does not discuss the state of the evidence material to our analysis, the effect of other instructions given to the jury,[6] the effect of counsel's arguments, or whether the jury was misled about the case that had been presented. (*Bullock v. Philip Morris USA, Inc., supra*, 159 Cal.App.4th at p. 685.) Given his briefing and the record presented on appeal, Vines has not carried his burden

---

Next, Vines's proposed version of CACI No. 3933 stated: "In this case, [plaintiffs] seek damages from more than one defendant. You must determine the liability of each defendant to [plaintiffs] separately. [¶] If you determine that more than one defendant is liable to [plaintiffs] for damages, you will be asked to find [plaintiffs]' total damages and the comparative fault of [Leiba] and [Vines]. [¶] In deciding on the amount of damages, consider only [Gann] and [Westview]'s claimed losses. Do not attempt to divide the damages between the defendants. The allocation of responsibility for payment of damages among multiple defendants is to be done by the court after you reach your verdict."

[6] Indeed, Vines does not provide a record of what instructions were actually given to the jury, nor does he provide a copy of a special verdict form he asserts the trial court erroneously refused. (See *Fladeboe, supra*, 150 Cal.App.4th at p. 58; accord *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["'Failure to provide an adequate record on an issue requires that the issue be resolved against'" an appellant].)

to show he advanced a theory of the case that justified the instructions at issue *and* that the trial court's decision on them resulted in prejudicial error.  (Cal. Const., art. VI, § 13; *Denham, supra*, 2 Cal.3d at p. 564.)

DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


GOETHALS, J.


GOODING, J.